WILLIAM MUELLER ET AL. v. COLUMBUS J. PROVO.

*Chattel mortgages—Bill of sale intended as security—Consideration.
—Execution—Replevin—Waiver of return—Judgment.*

1. Where a bill of sale (intended as security) is given for a specified consideration, and nothing appears upon its face to indicate that it is intended to secure any other or greater sum, the creditors of the mortgagor (vendor) are entitled to treat it as valid only to the amount specified; citing Jones, Chat. Mortg. § 79; Jones, Mortg. § 357.

So *held,* where, in replevin by a vendee claiming under such a bill of sale from the sheriff, who had levied upon the property at the suit of a creditor of the vendor, the court instructed the jury that the bill of sale was given to secure an indebtedness of $3,000, being the named consideration, while the undisputed testimony showed that it was given to secure advances *then* made to the amount of $7,000.

2. An assertion of a mortgage lien, after the payment of the

mortgage debt, is a fraud upon the creditors of the mortgagor, who may levy upon the property, and the mortgagees cannot maintain replevin against the officer.

3. In replevin the appraised value of the property is not conclusive, and is accepted only in the absence of more satisfactory evidence; but the Court will conclude, from the failure of the plaintiffs to contest such valuation, that they are satisfied with it.

4. In replevin from a sheriff of property seized on execution, he may elect to waive a return, and may take judgment for the amount of his lien, which is established by the judgment. The acceptance of a verdict for the value of the lien, and causing judgment to be entered thereon, is sufficient evidence of such election.

5. The Court distinguished this case from *Frederick v. Circuit Judge*, 52 Mich. 529. In that case the sheriff held the goods under an attachment, and at the time of the trial of the replevin suit no judgment had been rendered in the attachment suit.

Error to Delta. (Grant, J.)  Argued April 23, 1890. Decided May 2, 1890.

Replevin.  Plaintiffs bring error.  Affirmed.  The facts are stated in the opinion.

*F. D. Mead* (*E. C. Chapin*, of counsel), for appellants.
*Ball & Hanscom,* for defendant.

[The points of counsel are stated in the opinion.—RE-PORTER.]

CAHILL, J.  The plaintiffs in this suit, who were doing business as timber merchants in Chicago, brought an action of replevin in the circuit court for Delta county on June 1, 1888, to recover a quantity of cedar ties, posts, poles, and logs.

The defendant was the sheriff of Delta county, and had possession of the cedar under two executions against Frederick M. Olmsted, issued upon judgments rendered

in the Delta circuit; one in favor of William J. Quan & Co. for $1,772.33 damages, and $106.05 costs, and one in favor of Gray, Kingman & Collins for $2,009.40, and $20 costs. The executions were issued May 25, 1888, and levied upon the property in question, May 31, and the main question in the case is whether the defendant had a right to levy upon this property, and realize from it the amount of these executions. The facts necessary to be stated are as follows:

On October 26, 1886, the plaintiffs made an agreement with Olmsted, the execution debtor, by which he was to get out and deliver to the plaintiffs at Milwaukee, Racine, or Chicago a quantity of cedar ties and posts, for which they were to pay him an agreed price. The plaintiffs were to make advances to Olmsted in money and supplies during the progress of the work, and Olmsted agreed to give plaintiffs a bill of sale of the cedar as fast as it should be banked, if the plaintiffs should ask it. Olmsted also ageed to give to the plaintiffs a mortgage on all his goods, including those he had on hand at the date of making the agreement and those he was then shipping down, as further security for the advances made to him. Work under this arrangement was begun in the fall of 1886 and prosecuted through the winter and spring of 1887.

On July 20, 1887, Olmsted owed the plaintiffs a balance of $7,751.50, and on that day Mr. Christy, of the plaintiffs' firm, went to Escanaba, and took a bill of sale of the cedar then on hand. The consideration named in this bill of sale was $3,000, and we are satisfied that it was intended as security, and was not intended to pass the title to the cedar. On the same day, Olmsted executed to the plaintiffs a chattel mortgage, covering the property in two supply stores, certain teams, wagons, etc., as additional security for the advances so made to him by the plaintiffs. The chattel mortgage is not set out in

the record, and we are not informed as to the exact amount which it secured, nor as to its terms and conditions. It is stated generally that it was given as additional security. Olmsted, who was called by the plaintiffs, testified that the property covered by the chattel mortgage was worth about $4,600. At the time the bill of sale was given, the cedar was in different townships in Delta county, and had not been run down the streams. The exact amount of it does not appear to have been known to either Olmsted or the plaintiffs.

In September following, Olmsted began operations again, and prosecuted them through October, and until about November 25. During this time he had gotten out a considerable quantity of cedar, but the exact amount of this does not appear. During the summer of 1887, and after the bill of sale was given, he shipped to the plaintiffs at Chicago cedar to the amount of $3,000. This was testified to by Olmsted, and not disputed. On November 25 Olmsted made a new contract with the plaintiffs to work for them by the month. The plaintiffs were to furnish money and supplies as needed, as before, and Olmsted was to get out and deliver cedar of the same general description and quality as before. Under this arrangement the plaintiffs advanced to him $6,146.25, and Olmsted got out a large quantity of cedar ties and posts, the exact amount of which does not not appear.

From the facts so far stated it will appear that there were three classes of cedar gotten out by Olmsted:

1. That gotten out prior to July 20, 1887, and on which he gave plaintiffs a bill of sale.

2. That gotten out between July 20 and November 25, 1887, which, under the contract of October 26, 1886, clearly belonged to Olmsted, and on which the plaintiffs had no lien.

3. That gotten out after November 25, 1887, which belonged to the plaintiffs.

That gotten out prior to November 25 is called in the record the "old cedar," and that gotten out after that date the "new cedar." When the execution levies were made the old and the new cedar was all mixed up. It was mixed up in the woods before it came down in the river, and it was mixed up in the river. At the time of the levy it was lying in the booms at the mouth of the Rapid river, all jammed together. It was all marked alike "F. O.," and there was no way to distinguish the old from the new cedar. The sheriff levied upon all of it. Before beginning this suit, Mr. F. D. Mead, as attorney for the plaintiffs, demanded all this property of the sheriff, who refused to deliver it. This action was then brought.

The bill of exceptions contains all the testimony. It does not appear that the plaintiffs attempted to make a clear statement of their account with Olmsted upon the trial. What information is found in the record was drawn out of Mr. Henry A. Christy, the only one of the plaintiffs who was sworn, by a rigid cross-examination.

The jury rendered a special verdict, in substance as follows:

1. That the defendant did not unlawfully detain the property.

2. That the bill of sale given by Olmsted to the plaintiffs, under which they claimed the right to the possession of the property, was fully satisfied and paid to the plaintiffs before the commencement of this suit.

3. That so much of the property replevied as was manufactured and gotten out by Olmsted prior to November 25, 1887, was of the value of $4,057.51, and that the defendant had a special property in the same to the amount of $4,057.51 by virtue of his writs of execution.

The defendant having waived a return of the property, a judgment was rendered allowing him to recover against the plaintiffs the sum of $4,057.51; that being the amount

of his special property in the goods and chattels manu-
factured and gotten out previous to November 25, 1887.

This judgment is brought to this Court by the plaint-
iffs by writ of error, and the following points are made
against its validity: `

*First.* It is alleged that the circuit judge erred in
instructing the jury that the bill of sale given July 20,
1887, was to secure an indebtedness of $3,000, and it is
claimed that there was no testimony in the case upon
which to base such a charge; that the undisputed testi-
mony of Mr. Christy showed that the bill of sale was
given to secure advances made under the contract of
October 26, 1886, amounting at the time the bill of sale
was given to over $7,000.

This view is based upon the idea that the consideration
named in the bill of sale is not conclusive, but that the
plaintiffs were at liberty to show the actual demand
which the instrument was intended to secure.   This would
be true if the instrument itself showed that it was
intended to secure a larger amount than that named as the
consideration, but this rule can only apply to those cases
where a discrepancy appears upon the face of the paper
between the consideration mentioned at the commence-
ment and the debt described in the later conditions of the
instrument.   It is possible that, as between the plaintiffs
and Olmsted, the bill of sale might have been construed
as security for the entire debt due from Olmsted to them;
but where, as in this case, the bill of sale is given for a
named consideration, and nothing appears upon its face to
indicate that it was intended to secure any other or greater
sum, the creditors of the mortgagor are entitled to treat
the instrument as valid only to the amount specified.
Jones, Chat. Mortg. § 79; Jones, Mortg. § 357.

*Second.* It is claimed that the court erred in instruct-
ing the jury that the defendant had a right to levy upon

the property in question. The instruction of the court was as follows:

"When the sheriff takes property that is mortgaged, the law says that he has the right to take it and sell it, and sell the interest which the mortgagor (which would be Olmsted in this case) has. He sells it subject to the mortgagee's rights;   *   *   *   so that, so far as the property that was covered by the bill of sale is concerned, the defendant, Provo, the sheriff, had a right to take and hold it.   *   *   *   Now, assuming that mortgage was valid,—not tainted with fraud,—then I told you that the sheriff had a right to levy upon it, and hold possession of it, and that that replevin could not be maintained under those circumstances."

There was no error in this. How. Stat. § 7682. It is claimed that this instruction ignored the plaintiffs' rights—

1. Under their bill of sale, to the cedar cut before July 20, 1887.
2. To their right to the cedar cut after November 25, 1887, as owners of it.

Neither of these positions is correct. Under the statute just cited, the sheriff had an undoubted right to levy upon the cedar cut before November 25, even granting that the plaintiffs' mortgage was in force; but the verdict of the jury shows conclusively that the plaintiffs' mortgage was not in force, but had been paid; and, under those circumstances, for the plaintiffs to assert that the mortgage was in force, and unpaid, was fraudulent as against the execution creditors of Olmsted.

As to the property gotten out after November 25, 1887, the court instructed the jury that the plaintiffs were entitled to recover that. It is claimed that the verdict of the jury ignored this instruction. This we do not find to be the fact. The effect of the verdict was to give the plaintiffs all of the property replevied, which was appraised

80 MICH.—31.

at $10,123, subject only to the payment of the defendant's lien, amounting to $4,057.51. The balance so in their hands would amount to $6,065.49. They had before that received, in cedar shipped prior to January 1, 1888, $11,232.59, making a total of $17,298.08, exclusive of what may have been realized by them from the chattel mortgage, of which no account is given. We have seen that Olmsted valued the property covered by the chattel mortgage at $4,600. It is difficult to ascertain from this record the exact amount of plaintiffs' advances to Olmsted, but it appears that the balance due them January 1, 1888, was $6,146.28. If to this we add the amount of Olmsted's credits, $11,232.59, we have $17,378.87 as the amount which appeared on the plaintiffs' books against Olmsted January 1, 1888. These figures show that there was due the plaintiffs from Olmsted $80.79, and this without taking into consideration what they may have realized out of the property in the supply stores covered by the chattel mortgage.

The only chance for the plaintiffs to have been injured by the result of the verdict in this case, so far as we can make it out from the record, lays in the possible over-valuation of the property replevied by the appraisers under their writ. But the value of the property as found by the appraisers is not conclusive. It is accepted only in the absence of evidence more satisfactory. As the plaintiffs did not contest this valuation, we must conclude they were satisfied with it.

*Third.* It is objected that the verdict of the jury should have been for a return of the property to the sheriff, and that the judgment for the amount of the sheriff's lien was erroneous. We think the verdict was in harmony with the statute (How. Stat. §§ 8342 and 8351), which reads as follows:

"SEC. 8342. When either of the parties to an action of replevin, at the time of the commencement of the suit, shall have only a lien upon, or special property or part ownership in, the goods and chattels described in the writ, and is not the general owner thereof, that fact may be proved on the trial, or on the assessment of value, or on the assessment of damages, in all cases arising under this chapter; and the finding of the jury or court, as the case may be, shall be according to such fact, and the court shall thereupon render such judgment as shall be just between the parties."

"SEC. 8351. If any goods or chattels which are replevied had been attached, they shall, in case of judgment for a return, be held liable to the attachment, until final judgment in the suit in which they were attached, and for thirty days thereafter, in order to their being taken in execution; and if such final judgment be rendered before the return of the property, or if the property when replevied was seized and held on execution, it shall be held subject to the same attachment or seizure for thirty days after the return, in order that the execution may be served thereon, or the service thereof completed, in like manner as it might have been if such property had not been replevied."

We distinguish this case from that of *Frederick v. Circuit Judge*, 52 Mich. 529. In that case the sheriff had seized the goods under an attachment, and was asking a return of the property.[1] There was no way of determining at that time what the value of his special interest was. No judgment had been obtained, and it was possible that none would be. We do not wish to be understood as holding that the sheriff in this case might not have taken a judgment for a return of the property, but simply that he had a right to waive such return, and take a judgment for the amount of his lien, which was established, if he so elected. It was held by this Court in

[1] The sheriff had waived a return, and taken judgment for the amount of his lien, and a motion was made to vacate this portion of the judgment, and for the entry of a judgment for a return of the property, which was denied, and a *mandamus* was granted to compel the action asked for.

*First Nat'l Bank v. Crowley*, 24 Mich. 499, that where property is taken from the possession of the sheriff, who held it under executions, by a plaintiff in replevin without right, the sheriff might take a judgment for the full value of the property. If he could do that, he certainly could take judgment for any amount less than the full value of the property, which should be equal to the amount of his executions. *Moore v. Vrooman*, 32 Mich. 526.

It is objected that the record does not show that the defendant expressly waived a return of the property, and that for this reason the verdict and judgment should be set aside. We think the fact that the defendant accepted a verdict for the value of his liens, and caused judgment to be entered upon such verdict, is sufficient evidence of his election to waive a return.

The judgment must be affirmed, with costs.

CHAMPLIN, C. J., MORSE and LONG, JJ., concurred. GRANT, J., did not sit.

